IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

JUN 2 2 2010

ADONIS WRIGHT,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )    Civil Action No.# 01:09-cv-949
                                  )
FAIRFAX COUNTY, <u>et al.</u>         )
                                  )
        Defendants.               )
                                  )

## MEMORANDUM OPINION

Defendants, Fairfax County, Virginia (County), Gary S.
Tuggle (Detective Tuggle), and Officer Steven C. Shifflett
(Officer Shifflett), by counsel, have moved this Court for entry
of summary judgment in their favor on the remaining counts in the
Complaint filed against them by the Plaintiff, Adonis Wright
("Plaintiff").

On August 21, 2009, Plaintiff filed a Complaint against the
County, Detective Tuggle, Officer Shifflett, and other unnamed
Fairfax County police officers. Counts I through V set forth
claims against the County. Counts VI through X set forth claims
against Detective Tuggle and Officer Shifflett in both their
official and individual capacities. On October 16, 2009, this
Court granted the Defendants' Fed. R. Civ. P. 12(b)(6) motions

and dismissed Counts II, III, IV, V, VII, IX, and X of the
Complaint. Thus, the only claims remaining in the Complaint are
Counts I, VI, and VIII.

The County has moved the Court to grant it summary judgment
on Count I, 42 U.S.C. § 1983, and Detective Tuggle and Officer
Shifflett have moved the Court grant them summary judgment on
Count VI, 42 U.S.C. § 1983, and Count VIII, cause of action under
state law for malicious prosecution for the reasons set forth
herein.

Detective Tuggle is a County police officer and was assigned
as a detective to the Mount Vernon District Station, located in
the Alexandria section of the County, in August 2007. Officer
Shifflett is currently a police officer with Prince William
County, Virginia, and was formerly a police officer with the
County assigned as a patrol officer to the Mount Vernon District
Station, located in the Alexandria section of the County, in
August 2007.

On August 19, 2007, Plaintiff lived with his girlfriend,
Carmen Vest ("Vest"), at 8402 Eureka Court, Alexandria, Virginia,
in Fairfax County. On that date, Plaintiff left his residence
sometime between 8:00 p.m. and 9:00 p.m. Plaintiff does not
recall what he was wearing on August 19, 2007.

On August 19, 2007, at approximately 9:11 p.m., a 911 call
was received by the Fairfax County Department of Public Safety

-2-

Communications ("DPSC") that two black males jumped a Hispanic male, beat him up, and took his wallet and cell phone in the vicinity of Pole Road and Del Norte Court in the Alexandria section of the County. The first black male was described as wearing a white tee shirt with gray pants with a dark shirt over his shoulders. The second black male was described as dressed in all black and having dreadlocks. Both suspects were last seen heading on foot towards Francisco Way in the Alexandria section of the County.

Both suspects were described as six feet tall and of average built. The call to 911 was made by M.B., one of the witnesses who saw the victim of the robbery, Juan Gomez ("Gomez"), chasing the suspects past a community pool located at 5601 Pole Road in the Alexandria section of the County.

Fairfax County police officers were immediately dispatched by DPSC. Officer Shifflett was on patrol duty when he received a message from DPSC from the Computer-Aided Dispatch ("CAD") on the mobile computer terminal in his cruiser to respond to the reported robbery at approximately 9:12 p.m. Officer Shifflett was one of the first officers to arrive at the scene and met with the victim, Gomez. Officer Shifflett was advised that Gomez was accosted from behind while walking to his home, punched in the face and stomach, and his wallet containing $6,200 in cash was taken from him. The two suspects then fled on foot, making a

-3-

right onto Del Norte Court, ran past the clubhouse, through the playgrounds, and then towards the dead-end of Francisco Way.

Sergeant Robert Blakley was also on patrol duty in his police cruiser on August 19, 2007, when he received notification that a robbery had just occurred in the Mount Vernon District. As part of that notification, Sergeant Blakley received a lookout for robbery suspects over the radio and the CAD on the mobile computer terminal in his cruiser. The lookout described the suspects as two black males, one wearing a black shirt, blue jeans, and having dread locks. The second suspect was described as a black male wearing a white tee shirt, with a black tee shirt over his shoulders, and blue jeans.

At approximately 9:21 p.m., on August 19, 2007, Sergeant Blakley observed a black male with dread locks, wearing a black shirt and blue jeans, in the vicinity of the robbery which he had just received notification of at 9:14 p.m. Sergeant Blakley stopped the person at the intersection of Sacramento Drive and Francisco Way, and he identified himself as Adonis Wright ("Plaintiff"). Sergeant Blakley conducted a pat down for weapons, interviewed Plaintiff, and then contacted Officer Shifflett, who was still with the victim of the robbery, Gomez. Plaintiff advised Sergeant Blakley that he had just left his house, where he lived with his girlfriend, and that he was on his way to meet his brother who was going to pick him up in a car. While Sergeant

-4-

Blakley spoke with Plaintiff and his brother, Deontez Wright, walked within 30 feet of Sergeant Blakley but refused his request to come closer.

Sergeant Blakley planned to detain Deontez Wright because he matched the description of the second suspect in that he was a black male wearing a white tee shirt, with a black tee shirt over his shoulders, and blue jeans. However, before Sergeant Blakley could detain Deontez Wright, Officer Shifflett drove up with the victim, Gomez, in his police cruiser. Officer Shifflett used his cruiser's spotlight to illuminate Plaintiff. The victim stated that he was 89 percent sure that Plaintiff was one of the persons who robbed him. Because the victim was not 100 percent positive, Sergeant Blakley made the decision not to arrest Plaintiff that night but to turn the matter over to a Criminal Investigations Section ("CIS") detective for further investigation and Plaintiff was then free to leave. However, Plaintiff was later arrested at his residence on an outstanding warrant from the City of Alexandria.

On August 20, 2007, Detective Tuggle was assigned to investigate the robbery of Gomez. As part of his investigation, Detective Tuggle took the following steps on that date. He ran a CAD Event History for the patrol area in which Gomez was robbed and determined that there were no other similar events reported for August 19, 2007. He determined that there were no relevant

-5-

Mobile Video Recorders ("MVRs") from any of the police cruisers that responded to the robbery. He reviewed CIS cases and determined that there were no similar robbery cases reported on August 19, 2007.

On August 21, 2007, Detective Tuggle met with the victim, Gomez. Because Gomez spoke limited English, Detective Tuggle chose to conduct the interview in Spanish. Additionally, Gomez had a friend with him who was fluent in both English and Spanish. Gomez advised that on August 19, 2007, he had left the Bottom Dollar grocery store carrying a bag of groceries and headed towards Pole Road by way of Sacramento Drive. Gomez passed Francisco Way and walked between houses towards his home at 8412 Del Norte Court. At 8406 Del Norte Court he was confronted by three black males wearing dark clothing. He recalled that one of the black males had longer dread locks, and the other two had short hair. Two of the males began punching him while the other held him in a head lock from behind. One of the males reached into Gomez's pocket and took his wallet which contained $6,000 in cash. All three males then began running towards Francisco Way and Gomez ran after them. Gomez then encountered several people at the swimming pool a very short distance away, approximately one minute after the robbery had taken place. When asked about his identification of Plaintiff on August 19, 2007, Gomez reiterated that he was 89 percent sure that Plaintiff was one of

the people who had robbed him. Also as part of his investigation, Detective Tuggle met with Sergeant Blakley on August 21, 2007, who advised Detective Tuggle about his stop of Plaintiff shortly after the robbery occurred on August 19, 2007.

On August 22, 2007, Detective Tuggle conducted a canvass of the surrounding residences near the scene of the robbery and as a result learned the names of three possible witnesses, M.B., B.D., and E.A., who were at the swimming pool located at 5601 Pole Road. Only one of the witnesses, M.B., advised that she got a good look at one of the suspects, the one with dread locks, and that she would be able to pick him out of a photo lineup.

On August 22, 2007, Detective Tuggle conducted a photo line-up with M.B. at the swimming pool located at 5601 Pole Road in accordance with Fairfax County Police Department SOP 05-022, Physical and Photographic Lineups. Detective Tuggle showed M.B. six individual photographs, one at a time, and completed a line up form with signatures. One of the six photographs was a Department of Motor Vehicles ("DMV") photo of Plaintiff. M.B. looked at the photographs and positively identified Plaintiff's photograph as being one of the individuals she saw running past the pool while being chased by Gomez, on August 19, 2007, and indicated the same by signing her name on Plaintiff's photograph as well as on the Sequential Lineup Worksheet.

Based upon Gomez's identification to Officer Shifflett,

-7-

Sergeant Blakley, and Detective Tuggle that Gomez was 89 percent sure that Plaintiff was one of the persons who robbed him on August 19, 2007, that the robbery occurred within 30 feet of Plaintiff's residence at 8402 Eureka Court, that Plaintiff was seen in the area by patrol officers shortly after the robbery had taken place and fit the physical and clothing description of one of the robbers, and that M.B. identified Plaintiff's photograph as one of the individuals who she saw being chased by Gomez on August 19, 2007, Detective Tuggle appeared before Magistrate Brad G. Doane and after swearing under oath obtained a felony warrant for Plaintiff's arrest for robbery of Gomez in violation of Va. Code Ann. § 18.2-58 on August 23, 2007.

Plaintiff was arrested at his residence at 8402 Eureka Court on August 23, 2007, by Officer Shifflett and Officer Matthew Woodcock, and served with the warrant on August 24, 2007, at 1:32 a.m. After he was arrested, Plaintiff was interviewed by another County police detective, Alden Goodger. Plaintiff was advised of his Miranda rights after which he signed a Fairfax County Police Department Warning and Consent form.

As a result of his investigation, Detective Tuggle prepared an Incident Time Line superimposed over a Google Map of the area where Plaintiff lived, where the robbery occurred, where the three witnesses observed Gomez chasing two of the suspects past the pool, and where Sergeant Blakley conducted the subject stop

-8-

of Plaintiff.

Soon after he was arrested, Plaintiff was brought before a judge of the Fairfax County General District Court (general district court), arraigned, and appointed counsel. On August 27, 2007, Detective Tuggle interviewed Plaintiff's girlfriend, Vest, at the Mount Vernon District Station. Vest advised Detective Tuggle that Plaintiff had left 8402 Eureka Court at approximately 9:00 p.m. on August 19, 2007. On September 4, 2007, Detective Tuggle interviewed Plaintiff at the Fairfax County Adult Detention Center with Plaintiff's court-appointed counsel, Kelly Dennis, present. A preliminary hearing was scheduled to be heard in the general district court on November 5, 2007, and Detective Tuggle, Gomez, and M.B. appeared. However, the preliminary hearing was continued until December 5, 2007.

On December 5, 2007, Detective Tuggle, Gomez, and M.B. appeared in the general district court for the preliminary hearing. On that date, the robbery charge was nolle prosequi on the motion of the Commonwealth's Attorney. Plaintiff's attorney, Kelly Dennis, was present at the hearing on December 5, 2007. The only evidence that Plaintiff has in support of his claim that Gomez did not identify him as one of the persons who robbed him on August 19, 2007, is the fact that he was not arrested that night. The only evidence that Plaintiff has in support of his claim that it was the intent of persons employed by the County to

never bring the case to trial is that the case was <u>nolle</u>
<u>prosequi</u>.

The Police Department has issued General Orders that all
sworn officers of the Police Department are required to follow.
The General Orders are statements of policy and procedure dealing
with major operational and administrative areas. Action taken by
a police officer not in conformance with the General Orders may
be grounds for disciplinary action.

General Order 540.2, Police Citizen Contact, establishes the
guidelines regarding voluntary field contacts, investigative
stops, frisks and protective searches which extend beyond the
person during a lawful investigative stop. General Order 601,
Arrest Procedures, governs the arrest procedures that all police
officers are required to follow when making an arrest, including
that a felony arrest may be effected if probable cause exists,
that is, "facts and circumstances which, taken together with
rational inferences therefrom, would lead a prudent person to
believe that a crime is being or has been committed and that a
particular person committed it."

Plaintiff offers no evidence that any of the County's
officers violated his federal Constitutional rights. That alone
justifies the entry of summary judgment in favor of the County on
Plaintiff's claim under 42 U.S.C. § 1983. <u>City of Los Angeles v.</u>
<u>Heller</u>, 475  U.S. 796, 799 (1986); <u>Temkin v. Frederick County</u>

-10-

Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991). If a constitutional violation can be shown liability cannot be placed on the County. Cox v. County of Prince William, 249 F.3d 295, 301 (4th Cir. 2001), quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 420 (4th Cir. 1996).

Even if Detective Tuggle or Officer Shifflett violated any constitutional right of Plaintiff, he has failed to state a claim against the County. In this Circuit the requirements for proof of municipal liability under § 1983 are stringent. Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994). Section 1983 liability will not lie against governmental entities on the theory of respondeat superior. Monell v. Dept. of Social Servs., 436 U.S. 658, 692 (1978). Only if a plaintiff is able to establish the existence of an official policy, practice, or custom of the municipality that was the proximate cause of the deprivation of the plaintiff's rights can there be municipal liability under § 1983. Board of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997); Spell v. McDaniel, 824 F.2d 1380, 1385-87 (4th Cir. 1987); cert. denied sub nom City of Fayetteville v. Spell, 484 U.S. 1027 (1998).

It is clear that there is no official policy of the County to deprive citizens of their constitutional rights and Plaintiff never identified such a policy when requested in discovery. Thus, Plaintiff can only prevail by showing that his alleged

-11-

deprivation of his constitutional rights was proximately caused by a practice or custom of the County. Such practices or customs are established by "persistent and widespread practices" of officials who are authorized to make final decisions. Spell, 824 F.2d at 1386. Such practices, in order to constitute a "custom" must be "so permanent and well settled as to have the force of law." Castle v. Wolford, 1998 WL 766724 *2 (4th Cir. Oct. 20, 1998), (citing Spell, 824 F.2d at 1386). Only when these practices occur  frequently that the municipality knew or should have known of their existence can the municipality be held liable. Id. At most, Plaintiff has only alleged a single incident of unconstitutional activity, which as a matter of law cannot support a finding of a policy or custom. Jordan, 15 F.3d at 341 (citing City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality opinion) and 471 U.S. at 831 (concurring opinion)). Therefore, even assuming that Detective Tuggle or Officer Shifflett had deprived Plaintiff of a constitutional right, that would not be sufficient to establish a custom of such deprivation attributable to the County.

Plaintiff's evidence in support of his allegations in ¶ 22 of the Complaint in which he alleges that the police officers pursued policies, practices, and customs that were a direct and proximate cause of the unconstitutional arrest, incarceration, and of the deprivation of his constitutional rights is as

-12-

follows:

> Plaintiff was ruled out as suspect by victim on
> night of incident. This is why he was let go. Police
> returned to plaintiff's home of residence three days
> later and was arrested on false accusations.
> Plaintiff was offered polygraph by Detective Tuggle
> and when plaintiff repeatedly asked to take the test
> he was told by Detective Tuggle that it was no
> longer an option. No investigation ever done
> regarding plaintiffs alibi. People residing with
> plaintiff were never questioned.

Plaintiff's only evidence that he was ruled out as a suspect
on the night of the robbery is based upon the fact that he was
not arrested on August 19, 2007. The police officers had probable
cause to arrest Plaintiff on August 19, 2007, after Gomez stated
that he was 89 percent sure that Plaintiff was one of the persons
that had robbed him minutes earlier. The fact that Sergeant
Blakley exercised his discretion, released Plaintiff, and then
turned the case over to a CIS detective for further investigation
does not support Plaintiff's claim that he was ruled out as a
suspect by the victim on the night of the robbery. Plaintiff also
claims that while he was offered a polygraph examination by
Detective Tuggle, Detective Tuggle later told Plaintiff that it
was no longer an option. Polygraph evidence is not admissible in
judicial proceedings in Virginia state courts. Turner v.
Commonwealth, 278 Va. 739, 743, 685 S.E.2d 665, 667 (2009). The
Supreme Court has held that a per se rule against the admissible
of polygraph evidence in courts martial proceedings does not
violate the Fifth or Sixth Amendment rights of an accused to

-13-

present a defense. U.S. v. Scheffer, 523 U.S. 303, 317. Likewise, the Fourth Circuit has determined that polygraph evidence is not admissible in this circuit. U.S. v. Sanchez, 118 F.3d 192 (2007). Thus, because Plaintiff has no constitutional right to a polygraph, the fact that Detective Tuggle told Plaintiff a polygraph was no longer an option cannot amount to a constitutional violation.

Finally, Plaintiff's claim that his alibi was never investigated is specious, at best. A law enforcement officer is not required to "resolve every doubt about a suspect's guilt before probable cause is established." Torchinsky v. Siwinsky, 942 F.2d 257, 264 (4th Cir.1991) (citation omitted). Moreover, the only witness that Plaintiff claims should have been interviewed was Vest, who was interviewed several days after Plaintiff was arrested. However, according to Vest, Plaintiff left their residence at 9:00 p.m., on August 19, 2007, and the robbery occurred sometime shortly after 9:00 p.m. within 30 feet of Plaintiff's residence. Thus, she did not establish an alibi for Plaintiff.

When asked to state in detail the policies, practices, or customs of the County that were pursued by the officers, Plaintiff responded:

    Specifically, law enforcement and the prosecutor's office initiated and continued in a course of conduct that caused me to be incarcerated and to remain incarcerated. More specifically, it was the

-14-

> intent of those employed by the County to never
> bring the matter to trial, but rater [sic] summarily
> punish me by just keeping me incarcerated for a
> crime in which I did not commit. I was informed that
> I could not receive bail and was denied each time
> because the charge against me was that for which no
> bail would be given, yet a week prior to my first
> scheduled trial date (November 17, 2007), I was
> nevertheless released on my own personal
> recognizance.

Plaintiff's only evidence in support of statement that it was the

intent of those employed by the county to never bring the case to

trial was the fact that the case did not go to trial because it

was nolle prosequi by the Commonwealth Attorney. However, the

validity of Plaintiff's arrest is not dependant on whether or not

he actually committed the crime for which he was charged.

Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). Moreover, it

cannot be disputed that Detective Tuggle, along with the Gomez

and M.B., appeared at both scheduled preliminary hearing dates in

the general district court. The fact that the Commonwealth's

Attorney moved the general district court to nolle prosequi the

robbery warrant pursuant to Va. Code Ann. § 19.2-265.3 does not

establish that Detective Tuggle did not have probable cause to

obtain an arrest warrant for Plaintiff on August 23, 2007.

Because Plaintiff has failed to plead and prove the existence of

an official County policy, practice, or custom, the County is

entitled to summary judgment on Count I of Plaintiff's Complaint.

While Plaintiff's Complaint alleges that Detective Tuggle

and Officer Shifflett violated his rights under the Fourth,

Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, actions under 42 U.S.C. § 1983 based upon claims of false arrest or false imprisonment are properly analyzed as unreasonable seizures under the Fourth Amendment. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir.2002), Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir.2001).

"The Fourth Amendment is not violated by an arrest based on probable cause." Graham v. Connor, 490 U.S. 386, 396 (1989). Probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a prudent man in believing that the suspect had committed the offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). While probable cause demands more than a mere suspicion, it does not require evidence sufficient to convict. Taylor v. Waters, 81 F.3d 429, 434 (4th Cir.1996) (citing Wong Sun v. United States, 371 U.S. 471, 479 (1963)). Moreover, reasonable law enforcement officers need not resolve every doubt regarding a suspect's guilt before probable cause is established. Torchinsky v. Siwinsky, 942 F.2d 257, 264 (4th Cir. 1991) (citation omitted). The facts and circumstances known to Detective Tuggle clearly establish that he had probable cause to believe that Plaintiff was one of the people responsible for robbing Gomez on the night of August 19, 2007. The following facts formed Detective Tuggle's basis for determining that he had probable cause: Gomez's identification to Officer Shifflett and

-16-

Sergeant Blakley that Gomez was 89 percent sure that that Plaintiff was one of the persons who had robbed him minutes earlier, that the robbery occurred within 30 feet of Plaintiff's residence at 8402 Eureka Court, that Plaintiff was seen in the area by patrol officers shortly after the robbery and fit the physical and clothing description of one of the robbers, that M.B. positively identified Plaintiff's photograph as being one of the individuals who she saw being chased by Gomez on August 19, 2007, and Gomez's identification to Detective Tuggle on August 21, 2007, that he was 89 percent sure that Plaintiff was one of the persons responsible for robbing him on August 19, 2007.

Plaintiff argues that because the robbery charge was nolle prosequi at the preliminary hearing on December 5, 2007, this establishes that there was no probable cause for his arrest. However, the fact that Plaintiff was not convicted of the robbery charge does not mean that Detective Tuggle and Officer Shifflett did not have probable cause to arrest Plaintiff. Not everyone who is arrested but not convicted has a cause of action for violation of 42 U.S.C. § 1983 because the Constitution does not guarantee that only the guilty will be arrested. Baker v. McCollan, 443 U.S. 137, 145 (1979).

Because probable cause existed for Plaintiff's arrest on August 23, 2007, Detective Tuggle and Officer Shifflett are entitled to summary judgment on Plaintiff's claim against them in

-17-

their individual capacity under 42 U.S.C. § 1983.

Further, the doctrine of qualified immunity shields Detective Tuggle and Officer Shifflett from Plaintiffs' claim under 42 U.S.C. § 1983. This doctrine protects government officials from liability for civil damages as long as their conduct does not violate established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 129 S.Ct. 808, 815-16, 818-19 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 808, 818 (1982)). "Officials have qualified immunity either if the facts do not make out a violation of a constitutional right or if the right was not clearly established at the time." Snider v. Seung Lee, 584 F.3d 193, 198 (4th Cir. 2009) (citing Pearson, 129 S.Ct. at 815-16, 818-19).

The Supreme Court has determined that in the context of a § 1983 claim alleging that a police officer arrested an individual without probable cause, qualified immunity is available when an objectively reasonable officer could have concluded that a warrant for the arrest should issue. See Malley v. Briggs, 475 U.S. 335, 341 (1986). In other words, this immunity safeguards all but the patently incompetent or those officers who knowingly violate the law. Id.

The Fourth Circuit has elaborated upon this objective reasonableness standard, explaining that "the question is not whether there actually was probable cause for the [arrest]

-18-

warrant. . . , but whether an objective [police] officer could reasonably have believed probable cause to exist." <u>Gomez v. Atkins</u>, 296 F.3d 253, 261-62 (4th Cir. 2002). The rationale underlying this "favorable standard," it further has explained, arises from the fact that "'[i]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . like other officials who act in ways they reasonably believe to be lawful[,] [they] should not be held personally liable.'" <u>Id.</u> at 262 (all modifications in original) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987)).

The undisputed facts here make clear that Detective Tuggle and Officer Shifflett acted with objective reasonableness. Despite the victim's identification of Plaintiff as being one of the persons who had robbed him on the night of August 19, 2007, Plaintiff was not arrested that night when he was stopped by Sergeant Blakley. Instead, the case was assigned to Detective Tuggle, a detective at the Mount Vernon District Police Station, for further investigation. While Officer Shifflett did arrest Plaintiff by executing the arrest warrant obtained by Detective Tuggle on August 23, 2007, because there are no allegations that the warrant was not valid on its face, it was objectively reasonable for Officer Shifflett to arrest Plaintiff on a warrant obtained by Detective Tuggle.

Likewise, Detective Tuggle acted with objective reasonableness. On August 23, 2007, Detective Tuggle appeared before Magistrate Doane and swore under oath to the following:

> Gomez's identification to Officer Shifflett and Sergeant Blakley that Gomez was 89 percent sure that [Plaintiff] was one of the persons who had robbed him on August 19, 2007, that the robbery occurred within 30 feet of [Plaintiff]'s residence at 8402 Eureka Court, that [Plaintiff] was seen in the area by patrol officers shortly after the robbery and fit the physical and clothing description of one of the robbers, that M.B. identified [Plaintiff]'s photograph as being one of the individuals who she saw being chased by Gomez on August 19, 2007, and Gomez's identification to Detective Tuggle on August 21, 2007, that he was 89 percent sure that [Plaintiff] was one of the persons responsible for robbing him on August 19, 2007. Based upon these facts, Magistrate Doane found that there was probable cause for an arrest warrant to issue for [Plaintiff]'s arrest for robbing Gomez on August 19, 2007.

The Fourth Circuit has recognized that a warrant based primarily on the victim's identification of the attacker is sufficient to support a finding of probable cause. McKinney v. Richland County Sheriff's Dept., 431 F.3d 415, 418 (4th 2005). As in McKinney, on two separate occasions to three different officers Gomez identified Plaintiff as being one of the persons who had robbed him on August 19, 2007. Id. Not only did Detective Tuggle rely upon Gomez's identification of Plaintiff, he also relied upon other facts as noted above. These other facts, when coupled with Gomez's identification, made it objectively reasonable for Detective Tuggle to believe that he had probable

-20-

cause for Plaintiff's arrest.

While Detective Tuggle could have arrested Plaintiff without a warrant under Va. Code Ann. § 19.2-81 because he had probable cause to believe that Plaintiff had committed the felony of robbery, Detective Tuggle sought and obtained an arrest warrant from a magistrate on August 23, 2007. In Baker v. McCollan, 443 U.S. 137, 143-44 (1979), the Supreme Court recognized that the issuance of a facially valid warrant by a magistrate satisfies the probable cause standard. An officer who makes an arrest pursuant to a warrant is entitled to qualified immunity unless the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. Malley v. Briggs, 475 U.S. 335, 344-345 (1986). The Fourth Circuit nevertheless has acknowledged that merely obtaining an arrest warrant does not provide per se evidence of objective reasonableness, but it does raise a presumption of reasonableness. Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991). This presumption can be rebutted if a reasonably well-trained officer in the defendant's position would have known that he should not have applied for the warrant because his application was deficient for lack of probable cause. Id. (quoting Malley, 475 U.S. at 345). None of the undisputed facts rebut the presumption of reasonableness in this case. Plaintiff argues that a reasonable police officer would have conducted a

-21-

more thorough investigation before obtaining the arrest warrant from Magistrate Doane. Plaintiff contends that Detective Tuggle failed to investigate Plaintiff's alibi. Plaintiff's only alibi witness was his girlfriend, Vest. Plaintiff's argument fails for two reasons. First, the crime occurred after Vest testified that Plaintiff left their home on the night of August 19, 2007, and therefore Vest did not establish an alibi for Plaintiff.

Second, the Fourth Circuit has stated that the fact that an officer "did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause established by the victim's identification." McKinney, 431 F.3d at 418-419 (citing Wadkins v. Arnold, 214 F.3d 535, 542 (4th Cir. 2000), Torchinsky, 942 F.2d at 264.

The undisputed facts make clear that an objectively reasonable police officer could have believed that there was probable cause to find that Plaintiff was one of the persons responsible for the robbery of Gomez on August 19, 2007. This circumstance entitles Detective Tuggle and Officer Shifflett to qualified immunity.

Counts VIII sets forth a claim for malicious prosecution under state law against Detective Tuggle and Officer Shifflett in their official capacity as well as their individual capacity. Suits against individuals in their official capacity are the same as suits against the County. Edwards v. City of Goldsboro, 178

F.3d 231, 244 n.8 (4th Cir. 1999); Kentucky v. Graham, 473 U.S. 159, 165 (1985). Further, Plaintiff has ceded that this count for malicious prosecution against the officers in their official capacity is barred by sovereign immunity.

As to the malicious prosecution count in their individual capacity, Plaintiff's Complaint fails. To establish a *prima facie* case of malicious prosecution under Virginia law, Plaintiff must establish that his prosecution was:

> (1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff.

Hudson v. Lanier, 255 Va. 330, 333, 497 S.E.2d 471, 473 (1998). In a recent malicious prosecution action against a police officer, the Supreme Court of Virginia said:

> Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia. The requirements for maintaining such actions are more stringent than those applied to other tort cases, and are imposed to encourage criminal prosecutions in appropriate cases without fear of reprisal by civil actions, criminal prosecutions being essential to the maintenance of an orderly society.

Reilly v. Shepherd, 273 Va. 728, 733, 643 S.E.2d 216, 219 (2007). Probable cause in malicious prosecution actions is defined as knowledge of such a state of facts and circumstances as support the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. Va. R. & P. Co. v. Klaff, 123 Va. 260, 96 S.E.

244, 246 (1918); <u>Gaut v. Pyles</u>, 212 Va. 39, 41, 181 S.E.2d 645, 647 (1971). "The test of probable cause is to be applied as of the time when the action complained of was taken." <u>Bain v. Phillips</u>, 217 Va. at 394, 228 S.E.2d at 581.

On August 23, 2007, Detective Tuggle obtained a warrant charging Plaintiff with the robbery of Gomez on August 19, 2007, in violation of Va. Code Ann. § 18.2-58. That code section provides that:

> If any person commit robbery by partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault or otherwise putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony and shall be punished by confinement in a state correctional facility for life or any term not less than five years.

Va. Code Ann. § 18.2-58. Clearly, the facts and circumstances known to Detective Tuggle when he obtained the warrant charging Plaintiff with robbing Gomez created in Detective Tuggle's mind, as well as in the mind of Magistrate Doane, a reasonable belief that Plaintiff was one of the persons who was guilty of robbing Gomez on August 19, 2007 based on the facts from Detective Tuggle's sworn statement. Because there was probable cause for the warrant charging Plaintiff with robbing Gomez, Detective Tuggle and Officer Shifflett are entitled to summary judgment in their individual capacity on Count VIII, malicious prosecution.

For these reasons, the County, Detective Tuggle, and Officer

-24-

Shifflett are entitled to summary judgment in their favor on
Counts I, VI, and VIII of the Complaint. An appropriate order
shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
June 22, 2010